UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. 07-243-01 (HHK) |
| : | |
| v. : | |
| : | |
| JOHN STRAUB : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits its memorandum in aid of sentencing. Under the agreed upon sentencing guidelines, defendant is offense level 14 which yields a term of imprisonment of 15-21 months. The government does not oppose a sentence at the low end of the applicable Guideline range.

I. Factual Background

Defendant agreed to the following facts at the plea hearing:

The Carnegie Institution of Washington is a non-profit scientific research organization that specializes in the physical and biological sciences. CIW is organized into six departments, including the Geophysical Laboratory located at 5251 Broad Branch Road, N.W., Washington, D.C.. The Laboratory is engaged in the basic research and advanced education of earth sciences.

From approximately 1985 until January, 2006, defendant Straub was employed by the Laboratory as an Accountant and Business Manager. Straub's job responsibilities included oversight of Paul Meeder, who was, among other things, responsible for reviewing and reconciling the monthly credit card statements the Laboratory received from Diners Club and

1

Sam's Club. Straub was authorized the sign the payment checks mailed to Diners Club, located in The Lakes, Nevada, and to Sam's Club, located in Carol Stream, Illinois. Straub approved the general ledger entries that recorded the credit card expenditures of the Laboratory's employees into the proper account or category. On a quarterly basis, Straub was responsible for providing the detail that comprised the balances of the expense accounts, including the Advance account, to CIW for review and reconciliation.

Some employees of the Laboratory, including Straub, were issued credit cards issued by Diners Club and Sam's Club to pay to for expenditures incurred in furtherance of the Laboratory's operations. It was Straub's job responsibility, among others, to ensure that employees reimbursed the Laboratory for all personal expenditures that were paid for using the Diners Club and Sam's Club credit cards issued to them by the Laboratory.

Straub was issued a Diners Club and a Sam's Club credit card by the Laboratory. Straub was authorized to use the credit cards to pay to expenditures such as office supplies and equipment, gasoline for the Laboratory's vehicles, and travel to attend training classes or seminars.

From in or about May 1, 2002 through January 4, 2006, Straub used the Diners Club and Sam's Club credit cards issued to him by the Laboratory to pay for personal expenditures he incurred without the authority of CIW. For example, Straub used the Diners Club credit card to pay for items purchased at Sharper Image and he used the Sam's Club credit card to pay for electronic items such as a 42" Plasma television. In addition, Straub used the Diners Club credit card to pay for vacation expenditures in Orlando, Florida; Indianapolis, Indiana; St. Thomas, Virgin Islands; Curacao, Aruba; Las Vegas, Nevada; and Honolulu and Kapolei, Hawaii. Straub

used the Diners Club credit card to pay for vacation expenditures such as airline tickets, Walt Disney World merchandise, a Royal Caribbean Cruise, and a Voyager of the Seas cruise. Straub used the Diners Club and Sam's Club credit cards issued to him by the Laboratory to pay for unauthorized personal expenditures that totaled $105,597.21.

Straub was not authorized by CIW to incur these personal expenses on his behalf. Straub intentionally misused the CIW issued credit cards to defraud CIW of monies and of his honest services as a CIW employee. To carry out this scheme to defraud CIW, Straub caused the United States mails to be used by mailing payments from CIW in Washington, D.C. to businesses outside of Washington, D.C.

Straub did not reimburse the Laboratory for the personal expenditures he paid for using the Laboratory's credit cards in a timely manner. Between May 1, 2002 and January 4, 2006, Straub did not require that his subordinate, Paul Meeder, reimburse the Laboratory for personal credit card expenditures that he incurred in the amount of $115,541.16. Straub authorized the recording of his personal credit card expenditures and those of Paul Meeder in the Advance account. The Advance account was supposed to be used to temporarily record personal expenditures incurred by employees of the Laboratory until the employee reimbursed the Laboratory for the expenditures. The manner in which Straub's personal credit card expenditures were recorded in the Advance account made it difficult to determine that the expenditure had been incurred by him.

On a quarterly basis, Straub was supposed to provide the detail that comprised the balances of the expense accounts, including the Advance account, to CIW for reconciliation. However, Straub did not provide the detail of the Advance account in a timely manner to CIW.

On a monthly basis, Straub provided Dr. Wesley Huntress with a report that reflected the expenditures of each of the cost centers of the Laboratory. The balance of the Advance account was not included on this report because it was an overhead account.

## II. Sentencing Considerations

Defendant committed a series of very serious crimes against his employer. He parlayed his access to CIW's finances to betray the trust of his employer and his coworkers. He did so for no other reason than corrupt self-enrichment and he did so at the expense of the organization that had for years provided him stable employment. He continued to steal for years and stopped only because he was caught. As a result, he has lost his job and is now a convicted felon.

The Court should, however, be aware of certain mitigating factors. Defendant elected to enter a pre-indictment plea of guilty and, as part of his plea agreement, agreed to cooperate with the government.[1] Straub's coworker, Paul Meeder, shared at least equal complicity with defendant Straub.

When fashioning an appropriate sentence, the Court should consider the factors set forth in 18 U.S.C. sec. 3553(a). As described herein, defendant committed a series of very serious crimes. He does not, however, have any criminal history and does not appear to be at high risk of recidivism. He has accepted responsibility for his actions and appears genuinely remorseful.

---

[1] Defendant entered into a plea agreement several weeks after his accomplice Paul Meeder agreed to plead guilty and defendant Straub was unable to provide any assistance in the prosecution of Mr. Meeder. Defendant did, however, provide information to investigators concerning what he believed were other potential crimes associated with CIW. The government investigated these allegations and determined that, while there was no reason to discredit defendant's information, there was – for a variety of reasons – no basis to charge anyone with additional crimes. Government counsel presented this information to the U.S. Attorney's Office departure committee for its consideration and the Committee denied any downward departure in this matter.

Under these circumstances, the government does not oppose a sentence at the bottom end of the adjusted Guideline range (level 14), that is, a term of imprisonment of 15 months. The government requests that the Court also as part of its sentence impose a fine within the Guideline range.

III. Restitution

As part of the plea agreement, defendant is required to pay restitution to CIW in the amount of $82,789.06 and the Court should so order.

>Respectfully submitted,
>
>JEFFREY A. TAYLOR
>UNITED STATES ATTORNEY
>D.C. BAR # 498610
>
>By: _____/s/_____
>STEVEN J. DURHAM
>ASSISTANT U.S. ATTORNEY
>Fraud and Public Corruption Section
>555 4th Street, N.W.
>Washington, D.C. 20530
>steven.durham@usdoj.gov
>(202) 514-8316